CITED in *Martin* v. *Franklin Fire Ins. Co.*, 9 *Vr.* 141.

---

## DEN v. THE MORRIS CANAL AND BANKING COMPANY.

1. The original charter of the Morris Canal and Banking Company gives them the right to enter upon and take lands required for their work without *first* making compensation. Such enactment is constitutional; and although no compensation or assessment is ever made, the owner of the lands cannot bring ejectment.

2. The survey of the route of their canal required to be filed by the Morris Canal and Banking Company is only of their general route. It is not required that it should contain the width or quantity of land.

---

Error to the Circuit Court of the county of Passaic.

This was an action of ejectment against the Morris Canal and Banking Company, to recover a part of the land occupied by their canal, upon the ground that no agreement had been made by the company with the proprietor, and no legal assessment and payment or tender of the damages. The judge charged the jury that the defendants were entitled to their verdict, which was rendered accordingly, and a bill of exceptions taken to his charge by the plaintiff. Several questions were discussed, which not being noticed in the opinion of the court, it is not necessary to state.

Argued before Chief Justice GREEN and Justices ELMER

and HAINES.  *Zabriskie* and *Wm. Pennington*, for plaintiff in error, and *F. Frelinghuysen* and *Bradley* for defendants.

Opinion of the court by

ELMER, J.   Taking the fifth, sixth, and twentieth sections of the charter of the Morris Canal and Banking Company together, I am satisfied that it authorizes the company to enter upon, take possession of, and use such lands as might be necessary for the construction of the canal, before an agreement with the proprietor, or the assessment authorized by the sixth section.   The twentieth section, which seems to be peculiar to this charter, expressly reserves to the owners and occupants thereof, the right to an action for all damages they may sustain, where they have not agreed with the company, or the damages have not been ascertained and paid or tendered, as provided for by the said sixth section.   The fifth section enacts, that when the route shall be fixed upon and a survey thereof made and deposited, it shall be lawful, " at any time, to enter upon, take possession of and use, all and singular such lands, waters, and streams, subject to such compensation to be made therefor as is hereafter directed." Here is express authority to take and use the property " at any time."   The stress of the argument for the plaintiff, rests upon the words " subject to such compensation," &c.   They refer, I think, not only to the compensation provided for in the sixth section by an assessment, which of necessity it would require considerable time to perfect, but to that also which it is by the twentieth section left in the option of the proprietor to obtain by action.

In the case of *Kough* v. *Darcey*, 6 *Hal.* 237, decided so long ago as 1830, this court, without deeming it necessary to determine the true construction of the charter in the particular now in question, held that according to the plain letter, as well as the most reasonable meaning of the twentieth section, a right of action accrued under it, immediately upon damage being done, without the necessity of waiting until the company had a reasonable time to procure the assess-

ment. Chief Justice Ewing, delivering the opinion of the court, remarks that this section embraces all persons who may sustain injury, by actual occupation or otherwise, and covers the same extent of damages, right, and estate which are provided for, and which may be satisfied by or vested in the company by virtue of the previous sections. It is therefore one of the modes of compensation directed by the act. Authority being thus given to the company to take possession and use the requisite land, subject to being sued by the proprietor for such damages as he thereby sustained, including the taking from him his estate therein, unless he thought proper to agree upon the proper compensation, or to await an assessment, it follows as a necessary construction that the taking and using was meant to be absolute, and not subject to be afterwards disturbed. The taking and using subjected the company to be called upon for compensation, at the option of the proprietor, to the whole extent of the injury done to his possession and estate, by means of a suit at law. The sixth section, providing for an assessment, it is to be remarked also, although probably it may fairly be so interpreted as to authorize more than one appointment of appraisers and one concurrent assessment, evidently contemplated, and I think, justified that mode of proceeding. In point of fact, it is understood that but one appointment was made, and this was not done until the canal was nearly completed, a contemporaneous construction of the law, by no means conclusive, but entitled to considerable weight.

This was the first great work of the kind constructed in the state, and it appears by the act itself that it was considered a hazardous undertaking, involving the risk of the pecuniary loss that has occurred, and therefore entitled to special privileges. The act was passed before the constitution of the state contained any restriction upon the power of the legislature to take private property for the public use. Without meaning to say that this power was at that time absolute and unlimited, I entertain no doubt that it extended far enough to authorize the legislature to give to a company, for the purpose of enabling it to construct a canal, open

to the use of the public, the right to enter upon and use private property, subject to make compensation therefor by the payment of such damages as should be assessed, or as might be recovered by due course of law. I do not understand, however, that the constitutionality of the act, upon this construction, is seriously denied, and do not therefore think it necessary to discuss this question.

The supreme court of Maine has held, in the case of *Cushman* v. *Smith,* 34 *Maine R.* 248, that where the constitution prohibits taking private property for public use, without first making compensation, it must be understood not to prohibit giving authority to use and occupy land, as a proceeding incipient to the acquisition of it, but to prohibit only such an appropriation of it as deprives the owner of the whole or a part of his title. Authority having been, in that case, expressly given to take and use land for the construction of a railroad, and provision being made in the act for subsequently ascertaining the damage, it was further held, that the right to a temporary occupation became extinct by an unreasonable delay on the part of the company to perfect the proceedings, and that an action of trespass might be maintained to recover damages for the continuance of such occupation, unless compensation, or a tender of it, was made within a reasonable time after the commencement of the work. Whether the action of ejectment would have been sustained, does not appear. Whatever may be thought of the correctness of the decision upon either of the questions involved, it is obvious that the case before us is essentially different. By the charter under consideration, the action of trespass is expressly reserved, and was applicable immediately, and if resorted to might have covered the whole damages to which the party was entitled, for depriving him of his title, and there was no constitutional restriction requiring compensation to be made before the land was taken.

A pre-requisite to the taking and using of the land required for the canal, provided by the fifth section, was that the route should have been fixed upon, and its several works located by the president and directors, and a survey thereof

deposited in the office of the secretary of state. It was insisted on the trial that the survey filed was radically deficient in not specifying the width of the canal, and the judge was called on so to charge—which, having declined to do, his refusal was excepted to. Whether the canal was actually constructed on the route fixed by the survey filed—as to which there seems to have been some conflict of testimony—was distinctly submitted to the jury, and they were instructed that if it materially varied, their verdict should be for the plaintiff. In my opinion, there was no error in this particular. Besides this general survey filed in the office of the secretary of state, the company was required by the sixth section, when an assessment of the damages was to be made, to cause a survey or surveys, and map or maps to be made of any of the lands, &c., together with a field book exhibiting the quantity, &c., which were to be exhibited to the justice of the supreme court appointing the appraisers, certified by him, and filed in the office of the clerk of the county. These last mentioned surveys and maps must undoubtedly specify the particular land to be taken. The case of *Vail* v. *Morris and Essex Railroad Co.*, 1 *Zab.* 189, relied upon by the counsel of plaintiffs, arose under a charter containing provisions different from that of the Morris canal. No other survey was directed than that required to be filed in the secretary of state's office, upon which all the subsequent proceedings were to be based, and this court, upon the question being brought before them by a *certiorari* bringing up the appointment and proceedings of the commissioners in the particular case of the prosecutor, very properly held that the radical defect apparent upon the face of the proceedings was that it did not appear that the landholder whose title was sought to be divested, was in any way informed, previous to the meeting of the commissioners, of the location or quantity of the land required by the company for the use of the road. This case is altogether different; the survey directed to be filed of the whole route in the secretary of state's office, was plainly intended to be a general one; and it being found by the verdict of the jury that the canal was actually constructed on

the route fixed, I think we ought to sustain it as substantially sufficient, especially after it has been acquiesced in for so long a time by those interested.

It being established that the preliminary survey was sufficient, and that by the true construction of the charter the company had authority to take and use the land, that is to construct their canal upon it before any agreement was made with the owner, or any assessment or tender of the damages, subject to the liability of being sued for the damages thus occasioned, I think it follows as a necessary implication that the owner cannot recover the possession by action of ejectment. Such an action is not an action for the recovery of damages, within the meaning of the twentieth section. It would be absurd to suppose that the legislature meant to give the company a right to take the land and construct the canal upon it, and upon failure to obtain a valid assessment of the damages, subject the whole work to be destroyed, by permitting a part of it to be taken from their possession and filled up or otherwise obstructed.

If the action of ejectment could not be maintained, it is conceded that the verdict and judgment were right, and it becomes unnecessary to examine the various other questions arising on the bills of exceptions. Let the judgment be affirmed.